IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
UNITED STATES OF AMERICA          )
                                                )
            v.                                  )        Case No. 11-CR-279 (ABJ)
                                                )
RAMON DAVILA,                         )
                                                )
            Defendant.                       )
_____)

**MOTIONS *IN LIMINE* OF THE UNITED STATES**

The United States of America ("the government"), through undersigned counsel,

respectfully files its ominbus brief presenting five motions in limine seeking pretrial Orders

admitting or precluding certain arguments and evidence in the trial of this matter.  In support

thereof, the government would state as follows:

**INTRODUCTION**

I.        **The Indictment**

The Indictment, filed on September 23, 2011, charges defendant with twenty-four counts

of Making a False Statement, in violation of 18 U.S.C. § 1001.  The charges stem from a scheme

in which defendant, in executing his duties as a contract investigator for the United States Office

of Personnel Management, Federal Investigative Services ("OPM-FIS"), falsified material

information on numerous occasions in his reports of background investigations of individuals

who were employed by or seeking employment with federal agencies or government contractors.

For example, defendant stated that he had interviewed sources – and reported their testimony –

regarding the subjects of investigations, when, in fact, he had not interviewed those sources.  The

discovery of one such falsification by defendant, through OPM-FIS's quality assurance

procedures, triggered a full recovery effort to determine the extent of his falsifications. This involved reopening and reworking numerous investigations that had been assigned to defendant, at a total cost to the government of $79,468.00, based on OPM-FIS personnel assigned to the Davila recovery project tracking their hours spent working on this project.

## II.    Background

Until August 9, 2007, defendant was employed by three companies, USIS (formerly U.S. Investigative Services), ManTech MSM Security Services, Inc. ("ManTech"), and Systems Application & Technologies, Inc. ("SA-TECH"), as an investigator under contract to conduct background investigations on behalf of OPM, which is located in Washington, D.C.

OPM-FIS, formerly known as the Center for Federal Investigative Services or the Federal Investigative Services Division, is responsible for conducting background investigations for numerous federal agencies and their contractors, on individuals either employed by or seeking employment with those agencies or contractors. The purpose of the background investigation is to determine an individual's suitability for positions having access to classified information, for positions impacting national security, and for receiving or retaining security clearances. OPM-FIS has an investigator workforce comprised of federal agents employed by OPM-FIS and investigators employed by various companies, such as USIS, ManTech, and SA-TECH, under contract with OPM-FIS to conduct background investigations.

In conducting these background investigations, contract investigators conduct interviews of individuals who have information about the person who is the subject of the background investigation.  In addition, contract investigators seek out, obtain, and review documentary evidence, such as employment records, to verify and corroborate information provided by either the subject of the background investigation or persons interviewed during the investigation. After conducting interviews and obtaining documentary evidence, contract investigators prepare a Report of Investigation ("ROI"), containing the results of the interviews and records reviews, and electronically submit the ROI to OPM in Washington, D.C.  OPM then provides a copy of the investigative file to the requesting agency, which uses the information to determine an individual's eligibility for employment or a security clearance.

## ARGUMENT

The issue at trial is whether or not defendant actually conducted the interviews and records checks that the Indictment charges him with falsifying.  Numerous witnesses will testify that they were never interviewed by defendant or did not provide him with records contrary to defendant's representations in his ROI's.  Furthermore, the evidence will reveal numerous discrepancies between what witnesses purportedly stated during background investigation interviews and what they would have actually stated if they had, in fact, been interviewed. Given the strong evidence of intentional falsification, the government can only speculate that defendant hopes to offer a defense at trial aimed at jury nullification or a defense that runs counter to the Rules of Evidence and governing law.  The government addresses each in turn.

I.      **Motion in Limine No. 1: To preclude evidence, comment, and argument, the purpose of which is jury nullification.**

The government seeks an order in limine to preclude evidence, comment, and argument designed to encourage jury nullification.

The law is plain that it is improper for defendant to suggest in any way that the jury should acquit defendant even if it finds that the government has met its burden of proof.  The D.C. Circuit adheres to the almost universal rule disapproving arguments that ask the jury to decide a criminal case on extraneous matters, that is, to engage in jury nullification. In United States v. Washington, 705 F.2d 489 (D.C. Cir. 1983), the court, in holding that a defendant has no right to a jury instruction informing the jury of its power to engage in nullification, stated:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

Id. at 494; see also Hansen v. United States, 156 U.S. 51 (1895) ("federal courts have uniformly recognized the right and the duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed.")

A corollary to the rejection by the D.C. Circuit and other courts of jury nullification arguments and instructions that encourage nullification is the strident refusal by courts to admit evidence that is relevant only in as much as it would support a jury nullification argument or verdict.  United States v. Gorham, 523 F.2d 1088 (D.C. Cir. 1975); see also United States v. Funches, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant "); United States v. Crosby, 713 F.2d 1066, 1074 (5th Cir. 1983) (following Gorham and affirming exclusion of evidence finding "similar irrelevance and potential for prejudice").

The government does not doubt that counsel for Davila is well acquainted with these principles and would not seek knowingly to violate them.  In an abundance of caution, however, the government specifically calls attention to the following topics that would, if explored before the jury in the present case, constitute an invitation to nullify.  Although the government is unable to anticipate each form of jury nullification that may arise in the course of trial, the government here specifically addresses the following general categories of evidence and argument: (1) government's charging decisions; (2) government's motives; and (3) resource issues.  The defense should be precluded from presenting or eliciting evidence, comment, or argument concerning any of these areas, and it should instruct its witnesses accordingly.

## A.   Arguments and Evidence Relating to the Government's Charging Decisions

It is axiomatic that the purpose of a criminal trial is to determine whether the government has met its burden of proof as to the charged crimes, not to examine why the government decided to seek the indictment against the defendant, or why additional charges were not lodged against the defendant.  For that reason, the government requests that the Court preclude evidence, comment, and argument regarding the government's charging decisions and thereby confine the trial to its proper purpose and prevent irrelevant, unfairly prejudicial, and potentially confusing matters from influencing the jury's decision as to the charged crimes.

The basic principles of relevance are well known to the Court.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401. Relevancy "exists only as a relation between an item of evidence and a matter properly provable in the case." Advisory Committee Notes, Rule 401.  The determination of relevancy involves an inquiry into whether evidence "possesses sufficient

probative value to justify receiving it in evidence." Id. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

The decision by a prosecutor not to bring additional criminal charges against a defendant is irrelevant at the trial of charges lodged against the defendant. The decision not to file other charges has no tendency to make the existence of any fact that is of consequence to the action more probable or less probable. Therefore, evidence concerning the government's charging decisions is irrelevant and has no probative value.

Application of the test of relevancy to this case is straightforward. Defendant is charged with making false representations in his ROI's. At trial, the government expects the evidence will establish that defendant falsified the specific interviews and record checks that he is charged with falsifying. The jury will learn that the ROI's at issue in this case consisted of more interviews and record checks than just those which defendant is charged with falsifying. Obviously, the jury will know that defendant Davila is not charged with falsifying every interview and record check contained in those ROI's. But neither the fact that Davila has not been charged with any crime relating to the additional interviews and record checks contained in the ROI's mentioned in the Indictment, nor the government's reasons for not seeking such charges, has any tendency to make any fact of consequence more or less likely in the trial of defendant for making false statements or representations. The Court should therefore preclude evidence, comment, and argument concerning the government's charging decisions on the ground that such matters are irrelevant to the issues at the upcoming trial.

Evidence, comment, and argument regarding the government's charging decisions are irrelevant and should be excluded on that basis alone. However, there is another basis to grant the government's motion in limine: the evidence, comment, and argument at issue will create a

substantial risk of unfair prejudice and confusion of the issues. Those are risks that warrant the exclusion of even relevant evidence when the risk substantially outweighs the probative value of the evidence.  In this case, the risks are significant and the probative value is nil.

Under the Federal Rules of Evidence, even relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." Fed. R. Evid. 403. "Unfair prejudice" is defined as "an undue tendency to suggest decision on an improper basis." Advisory Committee Notes, Rule 403.

The danger of unfair prejudice and confusion of the issues resulting from improper inferences relating to the government's charging decisions is manifest.  For example, the jury might impute to the government certain beliefs based on the decision not to charge defendant with falsifying other interviews and record checks and improperly draw inferences regarding the government's view of those uncharged interviews and record checks, such as the conclusion that the government believes that defendant conducted all of those uncharged interviews and record checks.  To allow such potentially prejudicial and confusing matters before the jury would have an undue tendency to suggest jury nullification by focusing the jury on the relative merits of the government's charging decisions in different cases rather than the merits of the instant case against defendant.

For these reasons, the Court should grant the government's motion in limine and preclude evidence, comment, and argument on the government's charging decisions.  The government may seek one or more jury instructions to encourage the jury to remain focused on the facts and the applicable law, but the government respectfully suggests that granting the motion and precluding evidence, comment, and argument regarding the government's charging decisions is vital to preventing unfair prejudice and confusion of the issues.

**B.      Arguments and Evidence Relating to the Government's Purported Motives**

Likewise, the Court should preclude any evidence, comment, or argument regarding the government's purported motives in prosecuting defendant.

Any attempt to suggest selective or vindictive prosecution or to otherwise question the government's motives in front of the jury is highly improper.  As the Supreme Court has plainly stated, "[a] selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  United States v. Armstrong, 517 U.S. 456, 463 (1996).  "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Id. at 464 (internal quotation omitted).  Such matters are for the Court, and not the jury, to decide.  See United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983).

Any arguments based on improper government motives in bringing this prosecution, if raised, would constitute blatant attempts to engender jury sympathy and seek a verdict based on assertions unrelated to the question of defendant's guilt.  They should therefore be rejected.

**C.      Government Resource Issues**

The Court should also preclude evidence, comment, or argument designed to encourage nullification based on resource issues.  Defendant may try to claim that prosecuting cases, such as the instant prosecution, wastes valuable governmental resources.  The defense should be precluded from making such arguments – which are highly improper attempts at jury nullification – and other similar arguments at trial.  None of these arguments and observations makes any fact of consequence more or less likely.

## II.     Motion in Limine No. 2: To preclude "missing witness" arguments.

The government anticipates that the defense may seek to make opening or closing presentations to the effect that the government could have called certain witnesses but did not. But it is well established that such a "missing witness" argument is "prohibited if the opposing party did not peculiarly have the power to produce the missing witness or if the missing witness' testimony would not elucidate the transaction." United States v. Burnett, 890 F.2d 1233, 1241 n13 (D.C. Cir. 1989) (internal quotation marks omitted). Here, there is no indication that certain witnesses are available to the government but not the defense. Burnett, 890 F.3d at 1241; United States v. Norris, 873 F.2d 1519, 1521 (D.C. Cir. 1989). Accordingly, defendant may not invite the jury to speculate about what a non-testifying witness would have said, nor can they argue to the jury that the testimony of the witness would have been adverse to the government. United States v. Blakemore, 489 F.2d 193, 196 (6th Cir. 1973). The government asks that the Court order in limine that the defense not be permitted to suggest any adverse inference, based on the absence of any witness, unless the permission of the Court is obtained first.

## III.     Motion in Limine No. 3: To preclude evidence or argument regarding prior good acts by defendant or his lack of a criminal record.

The government moves in limine to preclude defendant from presenting evidence or argument to the jury regarding prior good acts of defendant, defendant's history of public service, any commendations received by defendant while a police officer, and defendant's lack of a criminal record, except for the limited evidence permitted under the narrow confines of Federal Rule of Evidence 405(a).[1]

---

[1] This motion to preclude prior good acts by defendant intentionally does not address evidence of non-falsification of uncharged interviews and record checks contained in the ROI's mentioned in the Indictment. The parties have agreed to a stipulation concerning such evidence, and that stipulation will be filed with the Court as soon as it has been signed by the parties.

In an effort to distract the jury from the charges for which defendant is standing trial, defendant may seek to elicit from government witnesses, or present through his own witnesses, testimony that defendant Davila has committed prior good acts, for example, when he was police commissioner in the United States Virgin Islands ("USVI").  This evidence may be offered affirmatively in defendant's case or in the form of questions posed during cross examination, such as: (a) "Isn't it true that defendant had a long history of public service before he became a background investigator?"; (b) "Isn't it true that as police commissioner of the USVI defendant regularly helped others by solving crimes?"  The risk that the defense may seek to introduce such evidence is heightened here, where defendant has in the past not only been a member of law enforcement but also held a leadership post.

As a general matter, "good acts" evidence is irrelevant and therefore inadmissible.  The law is clear: "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions."  United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity); United States v. Heideke, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment.").  Indeed, evidence of other lawful behavior is irrelevant because acts of honesty or good deeds do not prove an absence of dishonest acts.  See, e.g., United States v. Burke, 781 F.2d 1234, 1243 (7th Cir. 1985) (excluding evidence that a private investigator charged with extorting his clients had, in earlier years, provided information to the federal authorities in part because "[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable."); United States

v. Grimm, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.").

The same reasoning applies to defendant's lack of a criminal record.  Just as evidence of a defendant's "bad record" is generally not admissible at trial, evidence of a defendant's "clean record" should be excluded pursuant to Federal Rules of Evidence 401, 403, and 405.  United States v. Barry, 814 F.2d 1400, 1404 (9th Cir. 1987) (finding no abuse of discretion where trial court precluded "general evidence of an absence of criminal conduct").

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an essential element of the charge or defense.  See United States v. Beno, 324 F.2d 582, 584, 587 (2d Cir. 1963).  Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if defendants were allowed to pursue this irrelevant line of inquiry.  The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possess[es] the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."  See, e.g., Grimm, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").  Accordingly, the government requests that the Court issue an order in limine precluding all evidence and argument related to defendant's prior lawfulness or non-corrupt or honest conduct, except opinion and reputation evidence pursuant to Fed. R. Evid. 405(a).

**IV.     Motion in Limine No. 4:      To preclude any "Golden Rule" comments and arguments.**

The government respectfully moves to preclude comments and arguments invoking the "Golden Rule", that is, asking jurors to put themselves or their loved ones in defendant's

position.  The law is well settled that arguments invoking the "Golden Rule" are impermissible.
A " 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position 'is
universally recognized as improper because it encourages the jury to depart from neutrality and
to decide the case on the basis of personal interest and bias rather than on the evidence.'"
United States v. Roman, 492 F.3d 803, 805-06 (7th Cir. 2007) (quoting United States v. Teslim,
869 F.2d 316, 328 (7th Cir. 1989)) (affirming the in limine foreclosure of the defendant's
argument that jurors should put themselves in defendant's shoes and consider "'There but for the
grace of God go I.'"); see also United States v. Palma, 473 F.3d 899, 902 (8th Cir. 2007)
(holding that "[t]he prosecutor's comments," which "were akin to a golden rule violation because
they suggested the jurors were themselves direct victims of [the defendant's] crimes," were
improper because they "encourage[d] the jury to 'depart from neutrality and to decide the case
on the basis of personal interest and bias rather than on the evidence'" (quoting Lovett ex rel.
Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1083 (8th Cir.2000))).

## V.      Motion in Limine No. 5:      To preclude evidence, comments, and arguments regarding penalties.

The government respectfully moves this Court to preclude defendant from introducing
evidence, advancing arguments or questions, or otherwise mentioning the potential penalties
faced by defendant if convicted.  The D.C. Circuit long has recognized that generally "the jury
has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or
extent of it, or in probation."  Lyles v. United States, 254 F2d 725, 728 (D.C. Cir. 1958),
overruled in part on other grounds by United States v. Brawner, 471 F.2d 969 (D.C. Cir. 1972);
United States v. Patrick, 494 F.2d 1150, 1154 (D.C. Cir. 1974) (reversing and remanding with
instructions to properly instruct the jury that "[i]t is the jury's responsibility to determine guilt or

innocence on the basis of the evidence that has been presented.  You are not to consider the question of punishment in arriving at your verdict.  If you find the defendant guilty the Court will determine the appropriate sanction.").  Likewise, the U.S. Supreme Court has explained that "[i]t is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  Shannon v. United States, 512 U.S. 573, 579 (1994) (quoting United States v. Rogers, 422 U.S. 35, 40 (1975)). Generally, it is inappropriate for counsel to argue punishment to the jury or inform the jury of the potential punishment associated with a verdict.  See, e.g., Iain United States v. Richardson, 130 F.3d 765, 778 (7th Cir. 1997) ("arguing punishment to a jury is taboo"); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict.").

## **CONCLUSION**

For the above reasons, the government respectfully requests that the Court grant its

motions in limine, which seek a pretrial Order admitting or precluding certain possible evidence,

comment, or argument during trial of this matter.

Dated: February 17, 2012

> Respectfully submitted,
> RONALD C. MACHEN JR.
> United States Attorney
>
>
>  /s/ *Ellen Chubin Epstein*
> Ellen Chubin Epstein, DC Bar 442-861
> Mary Chris Dobbie, DC Bar 975-939
> Assistant United States Attorneys
> Fraud & Public Corruption Section
> 555 Fourth Street, N.W.
> Fifth Floor
> Washington, DC 20530
> (202) 252-6975
> Mary.chris.dobbie@usdoj.gov
> (202) 252-1773
> Ellen.Chubin@usdoj.gov

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this date, I caused a true and correct copy of the

foregoing to be electronically filed and made available for viewing and downloading from the

ECF system.

>  /s/ *Ellen Chubin Epstein*
> Ellen Chubin Epstein
> Assistant United States Attorney

Dated: February 17, 2012

14